# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

INSTITUTE FOR JUSTICE,
901 N. Glebe Road, Suite 900
Arlington, VA 22203,

      Plaintiff,

  v.

INTERNAL REVENUE SERVICE,
1111 Constitution Avenue, NW
Washington, DC 20224;
and
DEPARTMENT OF JUSTICE,
950 Pennsylvania Avenue, NW
Washington, DC 20530,

      Defendants.

Case No._____

Judge: _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff the Institute for Justice brings this complaint for declaratory and injunctive relief, and states as follows in support thereof:

### PRELIMINARY STATEMENT

1. The Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, "was enacted to promote transparency and accountability in how the federal government discharges its numerous and far-ranging responsibilities." *Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 256 (D.D.C. 2016). FOIA provides a means for the public to access government documents and "mandates that an agency disclose records upon request, unless they fall within one of nine exemptions." *Id.* at 257. FOIA also sharply curbs the fees an agency may charge for documents that "contribute significantly to public understanding of the operations or activities of the

government and [are] not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

2. In 2016 and 2017, Plaintiff the Institute for Justice (IJ) submitted two FOIA requests to the Internal Revenue Service (IRS) and one FOIA request to the Department of Justice (DOJ) in order to review both agencies' policies and reviews of matters pertaining to civil asset forfeiture and federal structuring laws.

3. Civil asset forfeiture is the government practice of seizing the assets of an individual merely suspected of criminal activity without going through the process necessary to convict that individual of a crime. The structuring laws prohibit individuals from breaking down transactions with financial institutions in a way designed to evade federal currency transaction reporting requirements (*i.e.*, "breaking down . . . a single sum of currency exceeding $10,000 into smaller sums," 31 C.F.R. § 1010.100(xx) (defining "structuring")); *see also* 31 U.S.C. § 5324 (forbidding structuring); 31 C.F.R. § 1010.314 (same). Together, civil asset forfeiture and the structuring laws provide a potent weapon that is highly susceptible to abuse. Indeed, notwithstanding that the structuring laws were intended to thwart criminal money launderers, the IRS has frequently used its seizure power to take the assets of legitimate cash-based businesses just because they make (by necessity) frequent cash deposits. This controversial practice has commanded substantial public attention and drawn widespread criticism from the media and even Congress.

4. As of the date of the filing of this Complaint, the IRS has responded substantively to one of IJ's FOIA requests by producing material that is almost entirely redacted. In doing so, the IRS invoked multiple FOIA exemptions that do not even arguably apply and failed to segregate non-exempt material. In addition, notwithstanding that the remaining two FOIA requests have

been pending for almost *a year and a half*, the IRS and DOJ have failed to make any formal determination in response to those requests—much less actually produce documents. As a result, the IRS and DOJ are actively impeding IJ's access to government information regarding this highly controversial practice in plain violation of FOIA.

5. Administrative remedies under FOIA are deemed exhausted when an agency fails to comply with the statute's applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having fully exhausted applicable administrative remedies for each of its three requests, IJ now turns to this Court to enforce FOIA's guarantee of public access to agency records. Accordingly, IJ asks this Court to declare that the IRS and DOJ have violated FOIA, to order both agencies to provide IJ with legally compliant responses to each of its three requests, and to grant other appropriate relief, including attorney's fees and costs.

## PARTIES

6. Plaintiff IJ is a 501(c)(3) non-profit civil liberties law firm that, among other things, litigates, engages in strategic research, publishes information and research, and advocates in support of liberty and individuals who are denied their constitutional rights. IJ is domiciled in Virginia with its offices located at 901 N. Glebe Road, Suite 900, Arlington, VA 22203.

7. Defendant the IRS is a component of the Department of the Treasury and an agency of the United States Government within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 552a(a)(1). The IRS is headquartered at 1111 Constitution Avenue, NW, Washington, DC 20224.

8. Defendant DOJ is an agency of the United States Government within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 552a(a)(1). DOJ is headquartered at 950 Pennsylvania Avenue, NW, Washington, DC 20530.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over IJ's claims pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

10. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201.

11. This Court has authority to award injunctive relief pursuant to 5 U.S.C. § 552(a)(4)(B).

12. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## LEGAL BACKGROUND

13. FOIA "requires the government to disclose, upon request, broad classes of documents identified in 5 U.S.C. § 552(a)," unless the documents are exempt under 5 U.S.C. § 552(b). *See Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 (D.C. Cir. 2015).

14. FOIA imposes strict deadlines on federal agencies when they receive a request for records pursuant to FOIA. First, an agency must acknowledge receipt of a FOIA request, in writing, within ten days of receipt of the request, exclusive of weekends and legal public holidays. 5 U.S.C. § 552(a)(7)(A). Under Treasury Department regulations governing IRS FOIA requests, a request to that agency is considered perfected (*i.e.*, the statutory response time begins to run) "on the date on which a complete request containing the [regulations' required] information . . . has been received." 31 C.F.R. § 1.5(f). DOJ does not have a similar regulation, and so FOIA's general timing provision—which sets "receipt" of a request as the trigger—governs. *See* 5 U.S.C. § 552(a)(6)(A)(i).

15. Next, an agency must respond to a party making a FOIA request within twenty days, exclusive of weekends and legal public holidays, notifying that party of the agency's determination whether to fulfill the request and of the requester's right to appeal the agency's determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i). The D.C. Circuit has explained that

4

to make a valid "determination" under the statute the agency must indicate "the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 185-86. 188 (D.C. Cir. 2013) (*CREW*); *see also Seavey v. Dep't of Justice*, 266 F. Supp. 3d 241, 245 (D.D.C. 2017) (the agency must "(1) gather[] and review[] the [requested] documents; (2) determin[e] and communicat[e] the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (3) inform[] the requester that it can appeal whatever portion of the 'determination' is adverse").

16.     The agency may extend this twenty-day deadline only in "unusual circumstances," 5 U.S.C. § 552(a)(6)(B)(iii), and must then make the requested records "promptly" available, *id.* § 552(a)(3)(A), (a)(6)(C)(i), except where it can establish that one of FOIA's narrow exemptions listed at § 552(b) applies.

17.     When an agency fails to make a timely determination with respect to a perfected FOIA request, a requester is deemed to have exhausted administrative remedies with respect to the request and may immediately file suit in district court.  5 U.S.C. § 552(a)(6)(C); *CREW*, 711 F.3d at 186.

18.     When an agency claims one of FOIA's narrow exemptions in order to withhold responsive material, it may not claim such exemption "too broadly, thereby sweeping unprotected information within the statute's reach." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006).  And even "[i]f a document contains exempt information, the agency must still release 'any reasonably segregable portion' after deletion of the nondisclosable portions." *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (quoting 5 U.S.C. § 552(b)).

19. FOIA also requires that agencies waive any fees associated with a request where "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). Even where the requester is not eligible for a fee waiver, FOIA still sharply constrains the fees an agency may charge for a request. *Commercial* use requests may be assessed "reasonable standard charges for document search, duplication, and *review*." *Id.* § 552(a)(4)(A)(ii)(I)-(II) (emphasis added). But where the request is not for commercial use, "fees shall be limited to reasonable standard charges for document search and duplication" only. *Id.* § 552(a)(4)(A)(ii)(III). And where the requester is a "representative of the news media,"[1] fees may only be assessed for the costs of "document duplication." *Id.* § 552(a)(4)(A)(ii)(II).

**FACTUAL BACKGROUND**

20. IJ has been at the forefront of an ongoing effort to better understand, and inform the general public about, the problems associated with civil forfeiture. Under civil forfeiture laws in place in many jurisdictions, property owners may permanently lose their money or other property without being convicted of, or even charged with, a crime. IJ has published numerous reports on civil forfeiture and its work has been cited by many academic publications. *See, e.g.*, Dick M. Carpenter II, *When Legal Is Not Ethical: The Case of Civil Forfeiture*, 10 Int'l J. Ethics 215, 215-28 (2015).

---

[1] "A representative of the news media is a person or entity that (1) gathers information of potential interest to a segment of the public; (2) uses its editorial skills to turn the raw materials into a distinct work; and (3) distributes that work to an audience." *Cause of Action v. FTC*, 961 F. Supp. 2d 142, 161 (D.D.C. 2013) (citing *Nat'l Sec. Archive v. U.S. Dep't of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989)).

21. In 2010, IJ published a groundbreaking study that analyzed the civil forfeiture laws of all 50 states and the federal government. *See* Marian R. Williams et al., *Policing for Profit: The Abuse of Civil Asset Forfeiture* 45-104 (2010), http://www.ij.org/images/pdf_folder/other_pubs/assetforfeituretoemail.pdf. A second edition of the study was released in November 2015. Both editions of the study received substantial media coverage, and IJ's findings have been cited frequently in national news stories. *See, e.g.*, Tony Lima, Opinion, *Cops and Robbers, All Rolled Into One*, Wall St. J., July 24, 2017 (citing *Policing for Profit* report); Christopher Ingraham, *Jeff Sessions's Justice Department Turns a $65 Million Asset Forfeiture Spigot Back on*, Wash. Post, July 19, 2017 (same).

22. As part of its work combatting civil forfeiture, IJ has sought to shine a light on the government's use of the structuring laws as a justification to engage in asset seizure and forfeiture. As with civil forfeiture generally, this topic has generated substantial public interest. *See, e.g.*, Robert W. Wood, *91% of IRS Seizures for 'Structuring' Involve Lawful Taxpayers*, Forbes, Apr. 5, 2017 (discussing findings from Treasury Inspector General for Tax Administration regarding structuring); Shaila Dewan, *Law Lets I.R.S. Seize Accounts on Suspicion, No Crime Required*, N.Y. Times, Oct. 25, 2014 (discussing IRS's use of structuring laws to take money from two IJ clients and citing information provided by IJ as obtained through FOIA); Editorial, *The IRS's Ill-Gotten Gains*, Wall St. J., July 15, 2015 (similar).

23. In 2015, IJ published a report that used data obtained from the IRS under FOIA to analyze the agency's use of civil forfeiture to take money from individuals and businesses accused of violating the structuring laws. *See* Dick M. Carpenter II & Larry Salzman, *Seize First, Question Later: The IRS and Civil Forfeiture* (2015), http://ij.org/wp-content/uploads/2015/03/seize-first-

question-later.pdf. The data produced in this report has been cited in national news stories, as well as in testimony before Congress.

24. The structuring laws do not distinguish between funds obtained legally (legal source structuring) or illegally (illegal source structuring). In either event, federal investigators have power to seize structured funds regardless whether they were involved in any type of illegal activity apart from the structuring violation. For years the government's *policies* also failed to distinguish between the two categories. After this failure to distinguish drew substantial condemnation, the IRS implemented a policy change on October 17, 2014 (the Policy Change) explaining it would generally "no longer pursue the seizure and forfeiture of funds associated solely with 'legal source' structuring cases." *See Protecting Small Businesses from IRS Abuse (Part II): Hearing Before the Subcomm. on Oversight of the H. Comm. on Ways & Means*, 114th Cong. (2016) (written testimony of John A. Koskinen, Comm'r & Richard Weber, Chief, Criminal Investigation, IRS), https://waysandmeans,house.gov/wp-content/uploads/2016/05/20160525OS-Koskinen-Testimony.pdf; *see also* Shaila Dewan, *Rules Change on I.R.S. Seizures, Too Late for Some*, N.Y. Times, Apr. 30, 2015. The Department of Justice followed suit in March 2015.

25. On March 30, 2017, the Treasury Inspector General for Tax Administration issued a report on the use of structuring laws against legally sourced funds. *See* Treasury Inspector Gen. for Tax Admin., *Criminal Investigation Enforced Structuring Laws Primarily Against Legal Source Funds and Compromised the Rights of Some Individuals and Businesses* (Mar. 30, 2017), https://www.treasury.gov/tigta/auditreports/2017reports/201730025fr.pdf. The report found that in 91% of 278 structuring investigations where the source of funds could be determined, the funds were obtained legally. And although the report chiefly addressed seizures that occurred before the Policy Change, the report also found "actions taken by the Government [that] were inconsistent

with the new policy" including three cases where there was no evidence the government "conformed to the new policy in making [the] seizures for structuring violations." *Id.* at 33.

26. In response to public criticism of legal-source forfeitures, the IRS and DOJ put in place a process to review closed forfeiture cases and return property where appropriate. In 2016, the IRS sent more than 1,800 letters to individuals who had money forfeited under the structuring laws, inviting them to file petitions for remission or mitigation seeking the return of their money. *See Internal Revenue Service and U.S. Department of Justice Efforts to Return Taxpayers' Seized Funds: Hearing Before the Subcomm. on Oversight of the H. Comm. on Ways & Means*, 115th Cong. (2018) (written testimony of John D. Fort, Chief, Criminal Investigation, IRS), https://waysandmeans.house.gov/wp-content/uploads/2018/06/20180620OS-Witness-Testimony-IRS.pdf. A total of 464 petitions were received, and the IRS granted 174 petitions, while recommending that the Department of Justice grant an additional 194 petitions within its jurisdiction. *Id.* Notwithstanding the IRS recommendation, the Department of Justice ultimately granted only 41 petitions. *See Internal Revenue Service and U.S. Department of Justice Efforts to Return Taxpayers' Seized Funds: Hearing Before the Subcomm. on Oversight of the H. Comm. on Ways & Means*, 115th Cong. (2018) (written testimony of John P. Cronan, Acting Assistant Att'y Gen., Criminal Div., DOJ), https://waysandmeans.house.gov/wp-content/uploads/2018/06/20180620OS-Witness-Testimony-DOJ.pdf.

27. As part of this process, both the IRS and the DOJ set up special procedures to review petitions for remission or mitigation under the structuring laws. The DOJ, for instance, undertook "an exceptional and exhaustive review process involving 256 petitions for remission or mitigation of judicial forfeitures." Cronan Testimony, *supra*. In addition, "[t]o ensure that the petitions were handled fairly and consistently nationwide, the Department issued guidance to the

USAOs detailing the petition process, applicable regulations, and required documentation." *Id.* Finally, "[u]pon the Department's decision, each petitioner was notified in writing by letter" which "provided the specific bases for the Department's determination whether to grant or deny the petition." *Id.*

28. At a June 20, 2018 hearing before the House Ways and Means Oversight Subcommittee, both the IRS and the DOJ confirmed that their review of structuring-related petitions is now complete. In addition, the DOJ confirmed that they view these cases as closed in other respects as well, meaning there are no pending civil or criminal proceedings with respect to any of these structuring allegations.

29. The disparity between the number of petitions that the IRS recommended DOJ grant, versus the number that DOJ actually granted, was addressed at a June 20, 2018 hearing before the House Ways and Means Oversight Subcommittee. There, Representative Jackie Walorski described the gap as "unbelievable," while Representative Peter Roskam said the Department of Justice's conduct was "shameful" and "indefensible." Representative Lynn Jenkins stated: "While I was pleased to see the IRS finally do what is right for most of the taxpayers caught up in this issue, I was discouraged to see that DOJ has not taken the same approach."

*IJ's 2016 FOIA Request to the IRS*

30. On June 20, 2016, IJ filed a FOIA request with the IRS (the 2016 Request) seeking documents pertaining to the Policy Change and the IRS's representation thereof in a congressional hearing. In particular, IJ sought: (1) Any documents pertaining to the agency's review of 76 particular investigations in which assets were seized prior to the Policy Change, as identified in a June 10, 2016 letter from the IRS to the U.S. House of Representatives' Committee on Ways and Means Subcommittee on Oversight (the June 10, 2016 Letter); (2) Copies of the notices to persons


or entities that had property seized relating to structuring activity between October 1, 2009 and the date of the Policy Change; (3) Any documents pertaining to the notices to persons or entities that had property seized relating to structuring activity between October 1, 2009 and the date of the Policy Change; (4) Any documents pertaining to the review of the FOIA information provided to IJ referenced in the June 10, 2016 Letter; and (5) Any documents generated during the preparation or drafting of the June 10, 2016 Letter.  *See* Exhibit A attached hereto.

31. IJ's 2016 Request also sought a fee waiver because the information requested (1) was generated by IRS, (2) would provide meaningful information about the IRS's implementation of the Policy Change and attendant review of structuring forfeitures, (3) would contribute to public understanding of the IRS's use of its civil forfeiture authority and its implementation of the Policy Change because IJ planned to analyze and summarize it for publication in a format digestible by the general public and (4) would contribute significantly to the public's understanding of the IRS's implementation of the Policy Change and its ongoing review of pre-policy change seizures since such information had not previously been disclosed and IJ would use its expertise to summarize and present it coherently.  So too, the information was not primarily sought for any commercial purposes of IJ, which is a non-profit 501(c)(3) organization.  Accordingly, IJ is entitled to a fee waiver for the 2016 IRS Request.

32. On October 18, 2016, the IRS issued an "interim response" and produced seven responsive pages to items (2) and (4) of the 2016 Request.  The IRS indicated it was "still processing items 1, 3 and 5" and would "contact [IJ] by January 16, 2017" with an update if it was "still unable to complete [IJ's] request."  *See* Exhibit B attached hereto.

33. Despite the IRS's indication that further progress would be made on the 2016 Request by January 16, 2017, the agency in fact did not produce any additional documents until

*February 22, 2018*—over one year later.  *See* Exhibit C attached hereto.  At that point it produced an additional 174 documents, 153 of which were either blank or so replete with redactions that the document was effectively illegible.  The remaining 21 documents consisted of emails that were partially redacted.  *See* Exhibit D attached hereto.

34. IJ submitted an administrative appeal dated May 22, 2018 (delivered May 23, 2018), to the IRS challenging its use of exemptions and its failure to segregate non-exempt material in its February 22, 2018 production.  In that appeal, IJ argued that the IRS employed multiple overlapping exemptions without clearly explaining how they plausibly apply or even what specific material they apply to.  *See* Exhibit E attached hereto.

35. For example, the IRS invoked, among other things, FOIA exemption (b)(7)(A) to redact almost the entirety of the first 153 pages of its February 22, 2018 production.  That exemption permits withholding of "records or information compiled for law enforcement purposes, but *only* to the extent" production "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A) (emphasis added).  The IRS appears to have used this exemption to redact all material responsive to IJ's request for documents pertaining to the IRS's review of 76 investigations in which assets were seized prior to the Policy Change.  Yet, as a threshold matter, exemption (b)(7)(A) can only be invoked where there is a specific, *pending* law enforcement proceeding. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978).  It is highly implausible that all 76 investigations that preceded a *2014* policy change are still pending so as to (possibly) warrant use of this exemption.

36. In contrast to its prolonged treatment of IJ's request for documents, the IRS disposed of IJ's *appeal* regarding redaction of those documents with stunning speed.  The IRS issued a denial of the appeal in a document dated May 30, 2018.  Although the IRS recognized

that IJ's administrative appeal challenged the segregability determinations from the February 22, 2018 production, the IRS's response did not address segregability. And, regarding the challenged exemptions, the IRS's response principally incorporated boilerplate, generally applicable language about FOIA principles without explaining how and why the exemptions were invoked to withhold the specific information IJ requested. *See* Exhibit F attached hereto.

37. Accordingly, IJ has exhausted its administrative remedies, and the 2016 IRS Request response is ripe for judicial resolution.

*IJ's 2017 FOIA Requests to the IRS and DOJ*

38. On January 23, 2017, IJ submitted complementary FOIA requests to the IRS and DOJ (the 2017 IRS Request and the 2017 DOJ Request, respectively) seeking documents regarding the agencies' consideration of petitions for remission or mitigation seeking the return of money seized under the structuring laws.

39. The 2017 IRS Request sought (1) documents concerning the number of such petitions submitted to either the IRS or DOJ; (2) documents concerning the IRS or DOJ's review of such petitions; (3) documents concerning the number of such petitions granted, denied, or otherwise resolved by the IRS or DOJ; (4) communications by the IRS with DOJ, Members of Congress, journalists, or others concerning such petitions; and (5) documents concerning the number of such petitions still awaiting a decision from the IRS or DOJ. *See* Exhibit G attached hereto.

40. The 2017 DOJ Request similarly sought (1) documents concerning the number of such petitions submitted; (2) documents concerning DOJ's review of such petitions; (3) documents concerning the number of such petitions granted, denied, or otherwise resolved by DOJ; (4) communications by DOJ with the IRS, Members of Congress, journalists, or others concerning

such petitions; and (5) documents concerning the number of such petitions still awaiting a decision from DOJ. *See* Exhibit H attached hereto.

41. As with its 2016 Request, IJ additionally sought fee waivers for the 2017 IRS Request and 2017 DOJ Request. In support of its request, IJ explained that the information requested (1) was generated by the respective agencies, (2) would provide meaningful information about each agency's review of structuring-related petitions for remission or mitigation, (3) would contribute to public understanding of each agency's review of structuring-related petitions for remission or mitigation because IJ planned to analyze and summarize it for publication in a format digestible by the general public, and (4) would contribute significantly to public understanding of each agency's review of structuring-related petitions for remission or mitigation because the information had not yet been disclosed and because IJ would use its expertise to summarize and present it coherently. So too, the information was not primarily sought for any commercial purposes of IJ. Accordingly, IJ is entitled to a fee waiver for both the 2017 IRS Request and the 2017 DOJ Request.

42. On February 1, 2017, DOJ sent a letter "acknowledg[ing] receipt" of the 2017 DOJ Request. It invoked FOIA's "unusual circumstances" provision to extend its time to respond by 10 days, and "assure[d]" IJ that its "request w[ould] be processed as soon as possible." DOJ's letter also explained that the agency had not yet made a decision regarding IJ's request for fee waiver. *See* Exhibit I attached hereto. Despite its assurance, DOJ had no further communication with IJ regarding the 2017 DOJ Request until December 5, 2017, at which point it emailed a representative for IJ explaining that the request was "being processed on the complex track" which entails an average of "203 days" for processing, and acknowledging that IJ's request had already been "pending for 220 *business* days." *See* Exhibit J attached hereto. Even with the lapse of that

14

substantial amount of time, DOJ's email explained that it had not even finished *searching* for responsive records, much less reviewing them and assessing whether to invoke FOIA's exemptions in order to withhold such records.

43.     The situation with IJ's 2017 IRS Request is similar.  The IRS has corresponded repeatedly with IJ solely for the purpose of expressing that it will need several additional months in order to process IJ's request.  As of the date of this filing, the IRS has failed to produce any documents regarding the 2017 IRS Request.

44.     As of the date of this filing, neither the IRS nor DOJ has made a determination within the meaning of FOIA on either the 2017 IRS Request or the 2017 DOJ Request.

45.     Because the IRS and DOJ have not issued a determination within the statutorily mandated timeframe, IJ is deemed to have exhausted its administrative remedies.  5 U.S.C. § 552(a)(6)(C); *CREW*, 711 F.3d at 186.

## CLAIMS FOR RELIEF

### CLAIM I
### (Unlawful Withholdings)

46.     The foregoing paragraphs are incorporated by reference as if set forth in full herein.

47.     FOIA requires agencies to produce all records responsive to a request unless the agency can show that the records requested fall into one of nine, narrowly delineated statutory exemptions.

48.     The IRS has failed to show that any of the records sought in IJ's 2016 Request qualify for one of FOIA's exemptions or that it conducted a proper segregability analysis for allegedly exempt documents.

49.     Accordingly, the IRS violated FOIA.

50. IJ is being harmed by reason of the IRS's violation of FOIA and unlawful withholding of records to which IJ is entitled. IJ will continue to be harmed unless the IRS is compelled to comply with FOIA and to unredact the produced records.

### CLAIM II
### (Failure to Produce Records)

51. The foregoing paragraphs are incorporated by reference as if set forth in full herein.

52. FOIA requires agencies to make a determination regarding all requests within 20 working days, or 30 days where unusual circumstances are present and the agency sends a timely written notice of such circumstances.

53. IJ submitted the 2017 IRS Request and the 2017 DOJ Request over one year ago.

54. IJ has a statutory right to receive a determination from the IRS and DOJ as to the 2017 IRS Request and the 2017 DOJ Request.

55. The IRS and DOJ violated FOIA by failing to make the required determination in response to IJ's outstanding FOIA requests.

56. IJ is being harmed by reason of the IRS and DOJ's violation of FOIA and unlawful failure to search for and produce records to which IJ is entitled. IJ will continue to be harmed unless the IRS and DOJ are compelled to comply with FOIA and produce the requested records without assessing a fee.

### CLAIM III
### (Costs and Fees)

57. The foregoing paragraphs are incorporated by reference as if set forth in full herein.

58.     Pursuant to 5 U.S.C. § 552(a)(4)(E), "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."

59.     IJ is statutorily entitled to recover fees and costs incurred as a result of IRS's improper withholding of agency records (the 2016 Request), the IRS and DOJ's improper failure to fulfill FOIA requests (the 2017 IRS Request and 2017 DOJ Request).

60.     IJ asks the court to order the IRS and DOJ to pay reasonable attorney fees and other litigation costs incurred in this case.

## REQUEST FOR RELIEF

WHEREFORE, IJ respectfully requests that this Court enter judgment in its favor and prays for the following relief:

1. A declaration pursuant to 28 U.S.C. § 2201 that:

    a. The IRS has violated the Freedom of Information Act by failing to lawfully fulfill IJ's FOIA request of June 20, 2016;

    b. The IRS has violated the Freedom of Information Act by failing to timely respond to IJ's FOIA request of January 23, 2017; and

    c. The DOJ has violated the Freedom of Information Act by failing to timely respond to IJ's FOIA request of January 23, 2017.

2. An order directing the IRS to:

    a. Unredact and release without assessment of any fee all responsive records to IJ's 2016 Request; and

    b. Immediately process and release without assessment of any fee the records requested in IJ's 2017 IRS Request.

3. An order directing DOJ to:

   a. Immediately process and release without assessment of any fee the records requested in IJ's 2017 DOJ Request.

4. An order awarding IJ its costs and attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E)(i).

5. Such other and further relief as the court deems just and proper.

Dated: June 22, 2018

        Respectfully submitted,

        /s/ Andrew D. Prins
        Andrew D. Prins (DC Bar No. 998490)
        LATHAM & WATKINS LLP
        555 Eleventh Street NW, Suite 1000
        Washington, DC 20004
        Tel: (202) 637-2200
        Email: andrew.prins@lw.com

        Ryan S. Baasch (DC Bar No. 144370)
        LATHAM & WATKINS LLP
        885 Third Avenue
        New York, NY 10022
        Tel: (212) 906-1200
        Email: ryan.baasch@lw.com

        *Attorneys for Plaintiff the Institute for Justice*