**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| INSTITUTE FOR JUSTICE, <br><br>             Plaintiff, <br><br>       v. <br><br> INTERNAL REVENUE SERVICE, *et al.*, <br><br>             Defendants. | Case No. 1:18-cv-01477-CJN <br><br> **ORAL ARGUMENT REQUESTED** |

**PLAINTIFF'S PARTIAL CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANT IRS'S PARTIAL MOTION FOR SUMMARY
JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Institute for Justice (IJ) respectfully moves for partial summary judgment on an excerpt of documents that Defendant the Internal Revenue Service (IRS) has withheld in this Freedom of Information Act (FOIA) action. IJ also opposes the IRS's partial cross-motion for summary judgment, which was filed on March 20, 2020. For the reasons set forth in IJ's accompanying Memorandum of Points and Authorities in Opposition to the IRS's Partial Motion for Summary Judgment and in Support of IJ's Cross-Motion for Summary Judgment, the IRS has improperly withheld a large number of documents and material that IJ is lawfully entitled to under FOIA. Specifically, the IRS has failed in multiple respects to properly apply the statutory exemptions to disclosure that it claimed pursuant to 5 U.S.C. §§ 552(b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

Pursuant to Local Rule 7(f), IJ also respectfully requests—if in the Court's discretion the circumstances permit—that oral argument (either in person or telephonic) be conducted. Courts recognize that a hearing is frequently warranted in FOIA cases, and hearings often reveal critical discrepancies. *See, e.g.*, *Marino v. DEA*, 15 F. Supp. 3d 141, 153 n.8 (D.D.C. 2014) (agency

US-DOCS\92156770.6

counsel proffered new explanations at argument not present in its declaration); *Consumer Fed'n of Am. v. USDA*, 539 F. Supp. 2d 225, 227 (D.D.C. 2008) (agency counsel admitted at argument "that the documents in this case were 'not handled in the way they should have been'"); *Long v. Immigration & Customs Enf't*, 149 F. Supp. 3d 39, 52 (D.D.C. 2015) (agency counsel made significant admission at argument and requested opportunity for further briefing). As explained in the accompanying memorandum, this case is about material that the IRS has systemically resisted the disclosure of—both in this litigation and beyond. In this circumstance a hearing is amply warranted to best evaluate the agency's bases for non-disclosure.

Dated: April 24, 2020                           Respectfully submitted,

                                                 */s/ Ryan S. Baasch*
                                                 Andrew D. Prins (D.C. Bar No. 998490)
                                                 Ryan S. Baasch (D.C. Bar No. 144370)
                                                 LATHAM & WATKINS LLP
                                                 555 Eleventh Street, NW
                                                 Suite 1000
                                                 Washington, DC 20004
                                                 Telephone: (202) 637-2200
                                                 Fax: (202) 637-2201
                                                 ryan.baasch@lw.com

                                                 *Counsel for Plaintiff*

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

INSTITUTE FOR JUSTICE,

           Plaintiff,

    v.

INTERNAL REVENUE SERVICE, *et al.*,

           Defendants.

Case No. 1:18-cv-01477-CJN

**<u>ORAL ARGUMENT REQUESTED</u>**

**<u>PLAINTIFF'S MEMORANDUM IN SUPPORT OF PARTIAL CROSS-MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT IRS'S PARTIAL
MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 4

      A.    Civil Asset Forfeiture and Structuring ..................................................... 4

      B.    IRS's Evasion of Oversight ......................................................................... 6

      C.    The FOIA Requests at Issue ....................................................................... 10

STANDARD OF REVIEW .................................................................................................. 12

ARGUMENT ...................................................................................................................... 13

I.      IRS Has Improperly Withheld Substantial Material ............................................... 13

      A.    The IRS Has Improperly Withheld Information Under Exemptions 6 and
           7(C) (Privacy) ............................................................................................. 13

      B.    The IRS Has Improperly Withheld Information Under Exemption 5
           (Deliberative Process Privilege) ................................................................. 21

      C.    The IRS Has Improperly Withheld Information Under Exemption 3 (Bank
           Secrecy Act) ................................................................................................ 24

      D.    The IRS Has Improperly Withheld Information Under Exemption 7(E)
           (Law Enforcement Techniques) .................................................................. 26

II.     The Court Should Order The IRS To Expeditiously Complete Its Productions ................ 27

CONCLUSION .................................................................................................................... 28

i

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*American Civil Liberties Union v. United States Department of Justice,*
  655 F.3d 1 (D.C. Cir. 2011)......................................................................................1, 19

*Animal Legal Defense Fund, Inc. v. Department of the Air Force,*
  44 F. Supp. 2d 295 (D.D.C. 1999)....................................................................................18

*Arthur Andersen & Co. v. IRS,*
  679 F.2d 254 (D.C. Cir. 1982)..........................................................................................21

*Barouch v. U.S. Department of Justice,*
  962 F. Supp. 2d 30 (D.D.C. 2013).....................................................................................20

*Boyd v. Executive Office for United States Attorneys,*
  87 F. Supp. 3d 58 (D.D.C. 2015).......................................................................................25

*Brayton v. Office of the United States Trade Representative,*
  641 F.3d 521 (D.C. Cir. 2011)...........................................................................................13

*BuzzFeed Inc. v. U.S. Department of Education,*
  2019 WL 3718928 (D.D.C. Aug. 7, 2019)........................................................................15

*Citizens for Responsibility & Ethics in Washington v. United States Department of
  Justice,*
  746 F.3d 1082 (D.C. Cir. 2014)...................................................................................13, 14

*Coastal States Gas Corp. v. Department of Energy,*
  617 F.2d 854 (D.C. Cir. 1980)...........................................................................................21

*Davis v. FBI,*
  2019 WL 2870729 (D.D.C. July 3, 2019)..........................................................................25

*Defenders of Wildlife v. United States Border Patrol,*
  623 F. Supp. 2d 83 (D.D.C. 2009).....................................................................................18

*\*Department of the Air Force v. Rose,*
  425 U.S. 352 (1976)...........................................................................................................17

*DiBacco v. United States Army,*
  795 F.3d 178 (D.C. Cir. 2015)...........................................................................................12

\*Authorities upon which we chiefly rely are marked with an asterisk.

**Page(s)**

*Electronic Privacy Information Center v. United States Department of Homeland Security*,
  777 F.3d 518 (D.C. Cir. 2015) ........................................................................13

*Fuller v. CIA*,
  2007 WL 666586 (D.D.C. Feb. 28, 2007) .........................................................20

*Gray v. United States Army Criminal Investigation Command*,
  742 F. Supp. 2d 68 (D.D.C. 2010) ....................................................................18

*Heartland Alliance for Human Needs & Human Rights v. United States Department of Homeland Security*,
  291 F. Supp. 3d 69 (D.D.C. 2018) ....................................................................21

*Institute for Justice v. IRS*,
  340 F. Supp. 3d 34 (D.D.C. 2018) ..................................................................8, 9

*Institute for Justice v. IRS*,
  941 F.3d 567 (D.C. Cir. 2019) ........................................................................9, 18

*Judge Rotenberg Educucational Center v. U.S. FDA*,
  376 F. Supp. 3d 47 (D.D.C. 2019) ....................................................................13

*Judicial Watch, Inc. v. United States Secret Service*,
  579 F. Supp. 2d 182 (D.D.C. 2008) ..................................................................27

*Lahr v. National Transportation Safety Board*,
  453 F. Supp. 2d 1153 (C.D. Cal. 2006), *rev'd on other grounds*, 569 F.3d 964
  (9th Cir. 2009) ...................................................................................................14

*Lardner v. Department of Justice*,
  638 F. Supp. 2d 14 (D.D.C. 2009), *aff'd*, 398 F. App'x 609 (D.C. Cir. 2010) ........................19

*Leonard v. Texas*,
  137 S. Ct. 847 (2017) ..........................................................................................5

*Mays v. DEA*,
  234 F.3d 1324 (D.C. Cir. 2000) ....................................................................15, 17

*Mead Data Central, Inc. v. United States Department of the Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) ...........................................................................17

*Milner v. Department of the Navy*,
  562 U.S. 562 (2011) ............................................................................................12

*Nation Magazine v. United States Customs Service*,
  71 F.3d 885 (D.C. Cir. 1995) ....................................................................3, 15, 19

**Page(s)**

*National Association of Home Builders v. Norton*,
309 F.3d 26 (D.C. Cir. 2002) ...................................................................................19, 21, 23

*National Security Archive v. CIA*,
752 F.3d 460 (D.C. Cir. 2014) ...............................................................................................22

*New Orleans Workers' Center for Racial Justice v. United States Immigration &
Customs Enforcement*,
373 F. Supp. 3d 16 (D.D.C. 2019) .........................................................................................16

*NRDC v. Department of Energy*,
191 F. Supp. 2d 41 (D.D.C. 2002) .....................................................................................3, 28

*Oglesby v. United States Department of the Army*,
79 F.3d 1172 (D.C. Cir. 1996) ...............................................................................................13

*Peter S. Herrick's Customs & International Trade Newsletter v. U.S. Customs &
Border Protection*,
2006 WL 1826185 (D.D.C. June 30, 2006) ...........................................................................26

*Petroleum Information Corp. v. United States Department of the Interior*,
976 F.2d 1429 (D.C. Cir. 1992) ........................................................................................21, 23

*Playboy Enterprises, Inc. v. Department of Justice*,
677 F.2d 931 (D.C. Cir. 1982) ...............................................................................................23

*Powell v. United States Bureau of Prisons*,
927 F.2d 1239 (D.C. Cir. 1991) .............................................................................................17

*Public Citizen Health Research Group v. FDA*,
185 F.3d 898 (D.C. Cir. 1999) .........................................................................................12, 13

*Quiñon v. FBI*,
86 F.3d 1222 (D.C. Cir. 1996) .......................................................................................3, 13, 20

*Ray v. Turner*,
587 F.2d 1187 (D.C. Cir. 1978) .............................................................................................20

*SafeCard Services, Inc. v. Securities & Exchange Commission*,
926 F.2d 1197 (D.C. Cir. 1991) .............................................................................................21

*Scarabin v. DEA*,
966 F.2d 989 (5th Cir. 1992) ...................................................................................................5

*Sciacca v. FBI*,
23 F. Supp. 3d 17 (D.D.C. 2014) ...........................................................................................18

**Page(s)**

*Senate of the Commonwealth of Puerto Rico v. United States Department of Justice*,
823 F.2d 574 (D.C. Cir. 1987) ...................................................................................21, 22

*Spirko v. United States Postal Service*,
147 F.3d 992 (D.C. Cir. 1998) ...........................................................................................20

*Stolt-Nielsen Transportation Group Ltd. v. United States*,
534 F.3d 728 (D.C. Cir. 2008) .....................................................................................13, 18

*United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in U.S. Currency*,
859 F.3d 1085 (D.C. Cir. 2017) ..........................................................................................4

*United States Department of State v. Ray*,
502 U.S. 164 (1991).............................................................................................................17

*Washington Post Co. v. United States Department of Agriculture*,
943 F. Supp. 31 (D.D.C. 1996).............................................................................................19

*Webster v. U.S. Department of Justice*,
2020 WL 1536303 (D.D.C. Mar. 31, 2020)...............................................................24, 25, 27

*Yunes v. United States Department of Justice*,
2016 WL 4506971 (D.D.C. Aug. 26, 2016) ...........................................................................24

## STATUTES AND REGULATIONS

5 U.S.C. § 552(a)(4)(B) ...........................................................................................................20

5 U.S.C. § 552(b) ...............................................................................................................13, 17

5 U.S.C. § 552(b)(3) ................................................................................................................24

5 U.S.C. § 552(b)(5) ................................................................................................................21

5 U.S.C. § 552(b)(6) ..............................................................................................................2, 14

5 U.S.C. § 552(b)(7)(C) .........................................................................................................2, 14

5 U.S.C. § 552(b)(7)(E) ...........................................................................................................26

31 U.S.C. § 5313(a) ..................................................................................................................4

31 U.S.C. § 5317.......................................................................................................................4

31 U.S.C. § 5317(c)(2)(A) ........................................................................................................1

**Page(s)**

31 U.S.C. § 5319.................................................................................................................24, 25

31 U.S.C. § 5324(a)(3).................................................................................................................4

Pub. L. No. 116-25, 133 Stat. 981 (2019)................................................................................1, 6

31 C.F.R. § 1010.100(xx) .............................................................................................................1

31 C.F.R. § 1010.311 ....................................................................................................................4

## OTHER AUTHORITIES

Fed. R. Crim. P. 41(d)(1) ..............................................................................................................4

*Protecting Small Businesses from IRS Abuse:  Hearing Before the Subcomm. on
    Oversight of the H. Comm. on Ways & Means*, 114th Cong. (Feb. 11, 2015) .........................7

*Protecting Small Businesses from IRS Abuse (Part II):  Hearing Before the
    Subcomm. on Oversight of the H. Comm. on Ways & Means*, 114th Cong.
    (May 25, 2016)..................................................................................................................5, 7, 8

**INTRODUCTION**

"[T]he basic purpose of the Freedom of Information Act [is] to open agency action to the light of public scrutiny, thereby furthering the citizens' right to be informed about what their government is up to." *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) (internal quotations omitted). This Freedom of Information Act (FOIA) suit is the latest in a long line of attempts by various stakeholders to determine what the IRS[1] is up to with civil asset forfeiture, and specifically its use of the "structuring" laws. The structuring laws prohibit individuals from breaking down transactions with financial institutions in a way designed to evade federal reporting requirements—for example, "breaking down . . . a single sum of currency exceeding $10,000 into small sums," 31 C.F.R. § 1010.100(xx). Everyone agrees that the purpose of the structuring laws is to provide a tool for law enforcement to pursue bigger crimes, *i.e.*, money laundering and fraud. But technically the structuring laws can be enforced for their own sake and nothing more. And assets involved in structuring "may be seized and forfeited." 31 U.S.C. § 5317(c)(2)(A). The IRS has seized money from many law-abiding citizens on the raw suspicion that the money was structured, regardless of whether the IRS suspected any underlying criminality. Several years ago, and after substantial public outrage, the agency agreed to (mostly) stop this practice unless it suspected underlying criminal activity. (Congress codified this stoppage in its recent Taxpayer First Act.[2]) And the IRS also committed to give past victims of the practice an opportunity to get their money back.

Plaintiff the Institute for Justice's (IJ) FOIA requests in this case are one part of a broader effort to determine if the IRS is honoring that change. But the IRS has stonewalled this request.

---

[1]   This suit seeks similar information from DOJ, but, because this motion sequence is about the IRS's documents only, this brief hereafter refers only to the IRS.

[2]   Pub. L. No. 116-25, § 1201, 133 Stat. 981, 986-87 (2019).

The IRS took many years to provide a single document responsive to IJ's requests, and in fact did not even begin fulfilling certain components of IJ's request until long after this suit was initiated. The documents it *has* produced have been highly redacted.  Unfortunately, delay and redaction have become a hallmark of the IRS's response to oversight of its use of the structuring laws.  Its own Inspector General criticized the agency for exactly this problem when it investigated this issue.  *See* Declaration of Dan Alban (Alban Decl.), Ex. F, Treasury Inspector Gen. Tax Admin., *Criminal Investigation Enforced Structuring Primarily Against Legal Source Funds and Compromised the Rights of Some Individuals and Businesses*, Ref. No. 2017-30-025, at 34 (Mar. 30, 2017) (TIGTA Report) (explaining the IRS "improperly withheld or redacted" a "substantial amount information").

The primary set of documents at issue in this summary judgment motion is a "representative sample" of individual case files for persons who petitioned the IRS for a return of their seized assets (via so-called "petitions for remission or mitigation").[3]  This information will be highly useful to show whether the IRS is faithfully living up to its commitment to give persons whose assets were improperly seized a fair opportunity to get their money back.  But the documents the IRS has produced are so thoroughly redacted that they are essentially illegible.  With almost no exceptions, the IRS has redacted every fact about every petitioner's case and left only legal boilerplate and other generic excerpts visible.  The IRS claims it was permitted to do this to protect individuals from an "unwarranted invasion of personal privacy."  *See* 5 U.S.C. § 552(b)(6), (b)(7)(C). But that is wrong.  IJ is *not seeking* personally identifying information for any individual petitioner.  That information may be redacted, but it is well-established that the IRS must disclose

---

[3]   *See* Stipulated Summary Judgment Briefing Schedule (MSJ Stip.) ¶¶ 3, 5, ECF No. 46 (explaining why representative sample is being used).

the facts of these petitioners' cases and any other information that will not directly reveal petitioner identities. *See Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (FOIA does not "permit[] an agency to exempt from disclosure *all* of the material in an investigatory record solely on the grounds that the record includes *some* information which identifies a private citizen or provides that person's name and address" (emphasis added)). And, as explained *infra* at 20–27, the IRS also improperly applied multiple other exemptions throughout its production.

This Court should grant summary judgment to IJ and overrule the IRS's withholdings for the reasons set forth below. In addition, this Court should structure a remedy that will best provide "guidance" to the IRS for its future production, *see* MSJ Stip. ¶ 3 (the IRS recognizing this sequence is designed to provide "guidance" to it for "future productions"), and to expeditiously bring this case to a resolution, *see* May 29, 2019 Minute Order (Court cautioning the IRS that "it is unlikely to find a timeline of multiple years to be a reasonable production schedule"). In order to accomplish those objectives, IJ respectfully suggests that it may be proper for the Court to exercise its "broad discretion" to review *in camera* a limited portion of the IRS's representative sample (in unredacted form) in order to provide guidance about how the agency should remedy its overbroad redactions going forward. *See Quiñon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (district court has "broad discretion" to conduct *in camera* review in FOIA cases). IJ also respectfully requests that, with the redaction issue streamlined, the Court enter a production schedule consistent with precedent in this district. *See NRDC v. Dep't of Energy*, 191 F. Supp. 2d 41, 43 n.5 (D.D.C. 2002) (ordering "vast majority" of processing of 7,500 pages to be completed within 32 days).

3

## BACKGROUND

### A.        Civil Asset Forfeiture and Structuring

Civil asset forfeiture statutes "allow[] law enforcement to seize property and then seek permanent forfeiture in a civil proceeding . . . all without so much as charging the owner with a criminal offense." *United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in U.S. Currency*, 859 F.3d 1085, 1087 (D.C. Cir. 2017).  This case centers around one particularly controversial form of civil asset forfeiture:  asset seizure based on suspicion that an individual violated so-called "structuring" laws.  The Bank Secrecy Act requires financial institutes to file reports regarding currency transactions that help the government detect money laundering. Financial institutions must file currency transaction reports for transactions that exceed $10,000. 31 U.S.C. § 5313(a); 31 C.F.R. § 1010.311.  In turn, federal law prohibits individuals from trying to *evade* this requirement, *i.e.*, by "structuring" transactions to avoid the reporting requirements. Specifically, "[n]o person shall, for the purpose of evading the reporting requirements . . . structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." 31 U.S.C. § 5324(a)(3).  For example, an individual who deposits $9,999 instead of $10,000 purposefully to evade reporting requirements may be guilty of structuring.  In turn, property involved in a violation of the structuring laws may be seized and forfeited. *Id.* § 5317.  The IRS may seize the money upon a mere showing of "probable cause" that a structuring violation has occurred.  Fed. R. Crim. P. 41(d)(1).

Although structuring itself is a stand-alone crime, the Treasury Department's Inspector General for Tax Administration has emphasized that the structuring laws exist *not* to be enforced in their own right, but instead to "detect[] and deter[] [underlying] criminal behavior."  TIGTA Report at 2; *id.* (indicating these laws "were **not** put in place just so that Government could enforce" them for their own sake (emphasis added)).  Individuals may make deposits close to—

4

but under—the $10,000 threshold for a variety of reasons, but enforcement is warranted only when the individual structures in this way to conceal *underlying illegal activity*. *See* Internal Revenue Manual 9.7.1.1(1) (July 31, 2002) (explaining seizure and forfeiture is meant to "deprive criminals of property used in, or acquired through, illegal activities").

Unfortunately, however, the IRS has had a long history of seizing funds "related to legal source structuring"—*i.e.*, funds that were themselves acquired legally (such as a small business owner who deals in cash and simply happens to make a $9,900 deposit). TIGTA Report at 1–2. There are a number of unusual incentives that might motivate that behavior; for example, agencies that participate in an investigation "that results in the seizure and eventual forfeiture of assets can request a share of the net proceed forfeited" to keep and use for other purposes. *Id.* at 5; *Leonard v. Texas*, 137 S. Ct. 847, 848 (2017) (Thomas, J., concurring in denial of cert.) ("[B]ecause the law enforcement entity responsible for seizing the property often keeps it, these entities have strong incentives to pursue forfeiture."); *see also Scarabin v. DEA*, 966 F.2d 989, 991–92 (5th Cir. 1992) (colorfully characterizing this abusive practice). Once assets are seized, even where no charges are ever brought, it is very challenging for individuals to get their money back. *See, e.g.*, TIGTA Report at 28 (finding that many individuals never get their money back). As one member of Congress has put it: "You don't have to be a lawyer or a lawmaker to know this is morally wrong. This amounts to stealing somebody's property by using coercion and the power of government. Just because it is the government doesn't mean that it is right. It makes it even worse." *See Protecting Small Businesses from IRS Abuse (Part II): Hearing Before the Subcomm. on Oversight of the H. Comm. on Ways & Means* (May 2016 *Protecting Small Businesses from IRS Abuse: Hearing Before the Subcomm. on Oversight of the H. Comm. on Ways & Means*), 114th Cong. 53 (May 25, 2016) (statement of Rep. Charles B. Rangel, Member, H. Comm. on Ways and Means).

5

And in 2019 Congress passed a law amending 31 U.S.C. § 5317(c)(2) to prohibit the IRS from seizing structured property unless it was "derived from an illegal source or the funds were structured for the purpose of concealing the violation of a criminal law or regulation other than [the structuring laws]."  Pub. L. No. 116-25, § 1201, 133 Stat. 981, 986-87 (2019).

## B.  The IRS's Evasion of Oversight

Various stakeholders have sought to investigate the IRS's structuring practices.  But the IRS has repeatedly evaded attempts to hold the agency accountable for this controversial practice.

Beginning several years ago, national media began documenting severe abuses connected with enforcement of the structuring laws.  Countless stories were reported indicating that the IRS was using the structuring laws *not* principally against money launderers, but in fact against small business owners who simply deal with large cash quantities—using seizure to strip those businesses of all of their operating cash and threaten their existence altogether.[4]  In response to the significant public controversy, the IRS announced that it would "no longer pursue the seizure and forfeiture of funds associated solely with 'legal source' structuring cases unless there are exceptional circumstances."  TIGTA Report at 3 (citation omitted).

IJ was one of the first to deeply investigate and shine a light on the IRS's practices, and in February 2015 it published a widely circulated report based on an earlier FOIA effort about the

---

[4]   *See, e.g.*, Alban Decl. Ex. B, Shaila Dewan, *Law Lets I.R.S. Seize Accounts on Suspicion, No Crime Required*, N.Y. Times, (Oct. 25, 2014) (documenting many individual victims of this practice); Alban Decl. Ex. C, Larry Salzman & Robert Everett Johnson, Opinion, *IRS Seizes First, Asks Questions Later*, Politico Magazine (Feb. 10, 2015) (The IRS "cleaned out the entire bank account of" a small business owner because her cash deposits "looked suspicious."); Alban Decl. Ex. D, Erin Fuchs, *The IRS Has Been Holding This Guy's $447,000 For 2 Years And He's Never Been Charged With A Crime*, Business Insider (Nov. 6, 2014) (describing how the IRS seized $447,000 from convenience store owners); Alban Decl. Ex. E, Timothy B. Lee, *The IRS seized $107,000 from this business owner for making too many small cash deposits*, Vox (May 2, 2015) ("Lyndon McLellan, a convenience store owner in rural North Carolina . . . had $107,702 seized by the IRS," even though "[t]he agency hasn't charged McLellan with any crime . . . .").

IRS's use of the structuring laws to seize property.  *See* Alban Decl. Ex. A, Dick. M. Carpenter & Larry Salzman, *Seize First, Question Later: The IRS and Civil Forfeiture* (Feb. 2015).   The findings confirmed the public fears and showed that the IRS was zealously seizing legal source funds under the structuring laws.  *Id.* at 17.  The IRS seized $26.5 million in these circumstances in 2012 (the last year data was available).  *Id.*  And its use of this practice had skyrocketed since 2005 (the earliest year for which IJ had data).

The Treasury Inspector General for Tax Administration (TIGTA) asked the IRS to comment on the allegations in IJ's report.  *See* TIGTA Report at 3.  The TIGTA then undertook an audit to investigate the full scope of the IRS's use of the structuring laws to seize property.  Its findings are interesting in their own right (the TIGTA discovered that the IRS "largely pursued cases against legal source funds from business accounts" and did not use this authority "in a manner consistent with its stated goal of interdicting criminal enterprises," *id.* at 8), but the most salient point for this case is that the IRS obstructed its own Inspector General.  The Report speaks for itself:

> IRS is required by law to provide TIGTA with all documents requested to conduct our audit unless barred by specific authority.  However, in the course of this audit, we encountered significant delays, and a substantial amount of information was initially **either improperly withheld or redacted** . . . . [I]n many instances the reasons [the IRS] initially gave us [for redactions] turned out to be incorrect, [and] it is clear that [the IRS] needs to substantially improve its process for making these determinations.

TIGTA Report at 34 (emphasis added).  The IRS also offered "unacceptable and unreasonable" bases to reject the TIGTA's recommendations for how the agency could improve its redaction and production processes.  *Id.* at 36–37.

Congressional hearings likewise illustrate the difficulty with holding the IRS to account for this practice.  *See Protecting Small Businesses from IRS Abuse:  Hearing Before the Subcomm. on Oversight of the H. Comm. on Ways & Means*, 114th Cong. (Feb. 11, 2015); May 2016

*Protecting Small Businesses from IRS Abuse: Hearing Before the Subcomm. on Oversight of the H. Comm. on Ways & Means* at 53. Congress discovered that the IRS was seeking to charge FOIA requesters (specifically, IJ) a "*quarter of a million dollars*" to process documents about its practices. May 2016 *Protecting Small Businesses from IRS Abuse: Hearing Before the Subcomm. on Oversight of the H. Comm. on Ways & Means* at 103–04 (statement of Rep. Rangel) (emphasis added).[5] The hearings also revealed that seizure victims were sometimes reprimanded for going public about their cases. *Id.* at 134–35.

Congress has also focused on the IRS's use of "Petitions for Remission or Mitigation"— the process seizure and forfeiture victims can use to reclaim their money. *Id.* at 82 (Written Testimony of John A. Koskinen, Commissioner IRS, and Richard Weber, Chief, Criminal Investigation, IRS). In essence, these petitions allow individuals to explain to the agency that their seized assets were *legally* sourced and so should be returned. *See, e.g.*, Alban Decl. Ex. H (IFJ 0073-000175–76, IFJ 0073-000177–78) (showing the IRS's letters to seizure and forfeiture victims explaining this process)). Then-IRS Commissioner Koskinen claimed the agency had been transparent with the public about this process and that its availability was well-known. May 2016 *Protecting Small Businesses from IRS Abuse: Hearing Before the Subcomm. on Oversight of the H. Comm. on Ways & Means* at 104. In fact, however, many people had no idea this process was available, much less how to navigate it. *Id.* (statement of Rep. Peter J. Roskam, Member, H. Comm. on Ways and Means) ("[J]ust for the record, people *don't* know that money is being remitted. We had to tell some of our own witnesses about this process." (emphasis added)).

---

[5] In fact, the IRS in the past sought to charge IJ *three quarters of a million dollars* to fulfill a FOIA request. *Inst. for Justice v. IRS*, 340 F. Supp. 3d 34, 38 (D.D.C. 2018) ("IRS at first demanded a fee of $753,760 before it would process the request, and it denied the Institute's request for a fee waiver.").

The IRS has also evaded private party attempts to hold it accountable. For example, in a separate FOIA suit IJ asked the IRS to produce records in its "Asset Forfeiture Tracking and Retrieval System" (AFTRAK) database; a database where the IRS compiles information about asset forfeitures. Although the IRS's "own [guidance] manual repeatedly refers to the [AFTRAK] as [a] 'database,'" the IRS's litigating position was that AFTRAK is "'*not* a database'" and that its contents "do not qualify as 'records'" that must be produced under FOIA. *Institute for Justice v. IRS*, 941 F.3d 567, 568–69 (D.C. Cir. 2019) (emphasis added) (citation omitted) (some quotation marks omitted). That argument carried the day in district court, where Judge McFadden honored the "presumption of good faith" that agency explanations typically enjoy in FOIA cases. *Institute for Justice v. IRS*, 340 F. Supp. 3d 34, 39 (D.D.C. 2018); *see id.* at 41 (expressing inclination "to defer to the IRS's" explanation of what the AFTRAK is, notwithstanding disputed evidence). But the D.C. Circuit reversed and remanded because, regardless of good faith, the IRS had not adequately explained certain discrepancies about AFTRAK. *Institute for Justice*, 941 F.3d 567. Then on remand *the IRS's explanation completely changed.* The IRS conceded that AFTRAK *is* a database and that its previous "representations were incorrect." Joint Status Report 2, *Institute for Justice v. IRS*, 340 F. Supp. 3d 34 (D.D.C. 2018) (No. 1:16-cv-02406-TNM), ECF No. 56. Judge McFadden was shocked, and expressed doubt that he would rely on future IRS declarations. *See* Alban Decl. Ex. M, at 2, 8 (Judge McFadden suggesting the IRS's explanation was "[p]ossibly fraudulent," that it was "highly unlikely that [he would] rely[] on an IRS declaration again in th[at] case"); *see also Institute for Justice*, 941 F.3d at 574 (explaining that the IRS's improper use of overlapping exemptions concealed how the agency was applying one of those exemptions "to redact information beyond that which" the statute permitted). That case remains ongoing.

## C.    The FOIA Requests at Issue

The three FOIA requests at issue in this case relate to IJ's latest efforts to hold the IRS to account for its abuse of the structuring laws.  For clarity, IJ divides the documents at issue in this suit into three general categories, corresponding to Exhibits H, K, and L of the Declaration of Dan Alban:

**Category (1) Documents From IJ's June 20, 2016 Request**:  On June 20, 2016, IJ submitted a FOIA request with the IRS seeking documents pertaining to the IRS's alleged change in policy to no longer pursue legal source structuring cases absent exceptional circumstances.  *See* Declaration of William M. Rowe (Rowe Decl.) ¶ 9; Alban Decl. Ex. G.  It took the IRS nearly two years (February 2018) to finish producing only 181 highly redacted pages responsive to this request.  The IRS then "rereleased" that production with its summary judgment brief after realizing that the initial redactions were unjustifiable.  *See* Rowe Decl. ¶¶ 12–14.  Even that updated production, however, contains significant redactions.  *See* Alban Decl. Ex. H (IFJ 0073-000001–181).

**Category (2) Agency-Level Documents From IJ's January 23, 2017 and July 3, 2018 Requests**:  On January 23, 2017 IJ submitted a complementary FOIA request seeking documents regarding the IRS's consideration of petitions for remission or mitigation seeking the return of money seized under the structuring laws.  Alban Decl. Ex. I.  That request was updated on July 3, 2018.  Alban Decl. Ex. J.  In combination, many (but not all) of the types of documents IJ sought in these requests were agency-level documents, such as guidance about how to process the petitions.  Rowe Decl. ¶¶ 15–16; Alban Decl. ¶¶ 15, 17.[6]  On November 2, 2018, the "IRS

---

[6]    The specific agency-level documents IJ requested were: (1) documents concerning the number of petitions for remission or mitigation submitted to the IRS; (2) documents concerning the number of such petitions granted, denied, or otherwise resolved by the IRS; (3) any communications with

represented that it identified approximately 13,209 pages responsive" to IJ's requests in their entirety, and the Court directed the agency to produce them by February 25, 2019. *See* April 8, 2019 Status Report ¶ 2, ECF No. 29 (April 2019 Status Report). By April 2, 2019, however, the IRS had produced only 1,338 pages.[7] And these documents were responsive *only* to IJ's agency-level requests. *See id.* ¶ 4; *see also* Alban Decl. Ex. K (IFJ 0001-0000001–197, IFJ 0018-0000001–1148). The IRS never explained the discrepancy between its initial estimate of 13,209 responsive pages and its actual production of 1,338 pages.

**(3) Petitioner-Specific Documents From IJ's January 23, 2017 and July 3, 2018 Requests:** IJ's 2017 and 2018 FOIA requests also sought individual case files for the petitions (petitioner-specific documents).[8] The IRS did not produce any petitioner-specific documents to IJ before April 2019. Instead, after finishing its production of agency-level documents, the IRS represented that it had just "uncovered approximately 130,000 pages" responsive to IJ's petitioner-specific requests. Even though the IRS had previously represented that its 13,209-page production would be responsive to *all* IJ requests—including the petitioner-specific requests—in April 2019 the agency conceded it had *not even finished searching* for petitioner-specific documents, much less begun producing them. April 8, 2019 Status Report ¶¶ 2, 12, 16. It then produced a 74-page

the IRS, members of Congress, journalists, or others concerning such petitions; (4) any documents concerning the number of such petitions still awaiting a decision from the IRS; and (5) IRS guidelines for review of petitions for remission or mitigation. Alban Decl. ¶¶ 15, 17.

[7]    The IRS's declarant stated that the agency produced 1,419 pages at this time. Rowe Decl. ¶ 19. That is inaccurate, as reflected in the Status Report that was filed when this production was complete. Instead, the IRS later produced an additional seven pages in January 2020 that had been erroneously omitted from this production, bringing the total of responsive pages to 1,345. The IRS declarant's addition of another 74 pages (to arrive at 1,419) is explained *infra* at n.9.

[8]    The petitioner-specific documents IJ requested were: (1) documents concerning the IRS's review of such petitions; and (2) final decision letters granting or denying the petitions. Alban Decl. ¶¶ 15, 17.

sample of these documents to IJ in April 2019. *Id.* at ¶ 6.[9] Since then, the IRS has been producing approximately 1,000 highly redacted pages per month of petitioner-specific records. *See* MSJ Stip. at 1. The IRS's latest estimate appears to be that it still has over 90,000 pages to produce. *See* MSJ Stip. 1 n.1

This summary judgment briefing addresses Categories (1) and (2) in full. For Category (3), the IRS's January 2020 production of 1,087 pages is being used as a representative sample of petitioner-specific documents. *See* Order on Summ. J. Briefing Schedule, ECF No. 47; Alban Decl. Ex. L (IFJ 0018-007684–008770).

## STANDARD OF REVIEW

FOIA was enacted "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request." *See DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015) (citation omitted). When an agency withholds information from a FOIA requester it must justify its withholding (redaction) under one of the nine exemptions at 5 U.S.C. § 552(b) that are "'explicitly made exclusive and must be narrowly construed.'" *Milner v. Dep't of the Navy*, 562 U.S. 562, 564–65 (2011) (citations omitted). When a plaintiff challenges the withholdings, "the agency has the burden of showing that [the] requested information comes within a FOIA exemption." *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999) (citation omitted). To satisfy its burden, the agency must "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the

---

[9] The IRS's declarant erroneously added this 74-page production to his tabulation of records that were produced responsive to IJ's agency-level document requests. Rowe Decl. ¶ 19. The parties have conferred and agree that this 74-page production consists entirely of petition files, and was produced prior to the Court's Order on the Summary Judgment Briefing Schedule (ECF No. 47). Accordingly, the January 2020 production is representative of the 74-page production, and those records are treated the same as all other petition files for purposes of the current partial motion for summary judgment.

12

information withheld logically falls within the claimed exemption," *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (citation omitted), and "reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection." *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). Agencies must also release all "reasonably segregable" portions of records that partially contain exempt material. 5 U.S.C. § 552(b).

District courts "determine *de novo* whether non-disclosure was permissible," *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015), and must also "make specific findings of segregability regarding the documents to be withheld," *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008) (citation omitted). "[W]hen the requester files a cross-motion for summary judgment" the "burden does *not* shift" because "the Government ultimately has the onus of proving that the documents are exempt from disclosure, while the burden upon the requester is merely to establish the absence of material factual issues before a summary disposition of the case could permissibly occur." *Judge Rotenberg Educ. Ctr. v. U.S. FDA*, 376 F. Supp. 3d 47, 59 (D.D.C. 2019) (alterations and quotations omitted); *see also Pub. Citizen*, 185 F.3d at 904–05. The trial court also has "broad discretion" to conduct *in camera* review of withheld documents in order to conclusively resolve an agency's withholdings. *See Quiñon*, 86 F.3d at 1228. "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

**ARGUMENT**

## I.      THE IRS HAS IMPROPERLY WITHHELD SUBSTANTIAL MATERIAL

### A.      The IRS Has Improperly Withheld Information Under Exemptions 6 and 7(C) (Privacy)

The vast majority of documents at issue in this summary judgment sequence were

13

improperly redacted by the IRS under FOIA's "privacy" exemptions—Exemptions 6 and 7(C). 5 U.S.C. § 552(b)(6), (b)(7)(C). The privacy exemptions may be invoked to protect individuals from "unwarranted invasion of personal privacy." Exemption 6 does this for "personnel and medical files" generally, and Exemption 7(C) applies specifically to "law enforcement" files. These exemptions authorize redaction of "names and identifying information"—*i.e.*, addresses, social security numbers, birth dates, bank account numbers, etc.—"of private citizens mentioned" in government files. *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1094 (D.C. Cir. 2014). IJ does not challenge the withholding of names, addresses, social security numbers, birth dates, or bank account numbers.[10] Importantly, however, when an agency locates a file with this kind of personalized material, it cannot use the bare presence of that material to redact the *entire file*. *Id.* (the exemptions do not permit agency "to exempt from disclosure *all* of the material in [a government record] solely on the grounds that the record includes *some* information which identifies a private citizen or provides that person's name and address" (second emphasis added) (citation omitted)). But this is exactly what the IRS has done.

The IRS's production at IFJ 0018-007729–30 (Alban Decl. Ex. L) is illustrative. That document is one of many memoranda of an interview that an IRS Task Force Officer conducted with a bank employee. *See* Rowe Decl. ¶ 42(b), row 19. The *entire* substance of the interview memorandum is redacted strictly on the basis of the privacy exemptions. The only part of the

---

[10] IJ also does not challenge withholdings of "names, telephone numbers, and/or office room numbers of Task Force Officers, Special Agents, and/or Asset Forfeiture Coordinators." *See* Rowe Decl. ¶¶ 42, 50. The IRS should, however, be directed to provide anonymous identifiers for officers or agents. *See Lahr v. Nat'l Transp. Safety Bd.*, 453 F. Supp. 2d 1153, 1183 (C.D. Cal. 2006) (finding no protectable privacy interest "that would be implicated by the release of witness identification numbers"), *rev'd on other grounds*, 569 F.3d 964 (9th Cir. 2009). This would be useful for IJ in order to evaluate whether there are differences in how individual agents or officers process these petitions.

memorandum that is *not* redacted is the very fact that the interviewing agent was a "Task Force Officer" with the IRS's "Financial Crimes Task Force" and that the memorandum was prepared after the agent refreshed her recollection. The interview details are redacted entirely. The production at pages IFJ 0018-007721–24 (Alban Decl. Ex. L) is likewise instructive. That document is one of many memoranda from a special agent to a supervisor summarizing a petitioner's case. Again, the entire substance of the document is redacted strictly on the basis of the privacy exemptions. The only part of the memorandum that is not redacted is the fact that it *is* a memorandum to a supervisor and that the petitioner apparently conceded that deposits were made to avoid reporting requirements. Every single factual detail that the agent summarized in the memorandum is fully redacted.

There is no valid justification for redactions this broad. *See Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000) (privacy exemption "ordinarily permits the Government to withhold only the ***specific information*** to which it applies, ***not the entire page or document*** in which the information appears" (emphasis added)); *Nation Magazine v. U.S. Customers Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (FOIA does not "permit[] an agency to exempt from disclosure ***all*** of the material in an investigatory record solely on the grounds that the record includes *some* information which identifies a private citizen or provides that person's name and address." (emphasis added)). And the IRS offers none. The IRS's justification is that these documents would reveal "[1] names of petitioners, [2] their personal backgrounds, and [3] extensive factual information related to their cases." *See* Rowe Decl. ¶ 40. But this asserted justification conflates protected material—*i.e.*, "names of petitioners,"—with information that is plainly *not* protected: "factual information related to their cases." *See BuzzFeed Inc. v. U.S. Dep't of Educ.*, 2019 WL 3718928, at *2 (D.D.C. Aug. 7, 2019) (agency improperly withheld "details too general to allow for identification of

individuals involved" by redacting details of how "school districts . . . investigated and responded to [Title IX] complaints"); *New Orleans Workers' Ctr. for Racial Justice v. U.S. Immigration & Customs Enf't*, 373 F. Supp. 3d 16, 63 (D.D.C. 2019) (agency could not justify redaction of entire documents showing "case history" for immigration cases instead of redacting only "personally identifying information" and releasing the rest (citations omitted)).

The IRS claims that all of this information is exempt because release would "reveal[] that the petitioners filed a petition for remission or mitigation or . . . reveal[] personal details about petitioners that are not available to the public." Rowe Decl. ¶ 40.[11]  But that is false as a matter of basic logic.  So long as truly personal identifying information (*i.e.*, names, addresses, etc.) is redacted, then the release of other information, such as "factual information related to [petitioner] cases," *cannot possibly reveal* that any individual person filed a petition or any of their personal details.  The following hypothetical example illustrates the point, with protected information identified with a strike-through:

> This interview memorandum summarizes a discussion with ~~John Doe~~, a bank-teller at the location where Petitioner ~~Mary Smith~~ made repeated $9,900 deposits.  I asked ~~Mr. Doe~~ whether Petitioner ever indicated she was aware of reporting requirements for deposits in excess of $10,000.  He said no.  I also asked whether Petitioner ever came to the bank with more than $10,000 to deposit, but deliberately decided to deposit less than she was carrying.  He said no.  I asked ~~Mr. Doe~~ to confirm that Petitioners' account number is ~~555XXX555~~.  He said yes.  I thanked ~~Mr. Doe~~ for his time and returned to headquarters to summarize my interview.

The strike-through redactions fully protect individual privacy interests:  Provided that this information is redacted, then the release of the remaining information cannot invade anyone's privacy; it could describe any one of literally thousands or even millions of people.

---

[11]  *See also* Rowe Decl. ¶ 42(b), row 16 (same regarding memoranda from Special Agent to supervisor regarding petitioner case); *id.* at row 19 (same regarding memoranda of Task Force Officer/Special Agent regarding bank employee interviews).

This is the well-established method of disclosing information from personal case files and other similar materials in FOIA cases.  For example, in *Department of the Air Force v. Rose*, FOIA requesters sought case summaries of Air Force cadet honor and ethics hearings for research into military service academy disciplinary systems.  425 U.S. 352, 354–55 (1976).  The Air Force sought to categorically withhold the case summaries.  But the Supreme Court recognized that the request should be honored, with only "personal references or other identifying information" withheld.  *Id.* at 380.  The Court even recognized that "redaction [would] not eliminate *all* risks of identifiability" because of unique concerns about how the Air Force produced these summaries, but nevertheless concluded that the information should be released.  *Id.* at 381–82 (emphasis added).  This has become the time-honored way to faithfully implement privacy exemptions in files that contain a host of material that does not identify any individual.  *See, e.g.*, *U.S. Dep't of State v. Ray*, 502 U.S. 164, 169, 178 (1991) (in response to FOIA request for documents about deportees, government produced "contents of individual interviews[] and details about the status of the interviewees" but was allowed to redact "names and other identifying information"); *Mays v. DEA*, 234 F.3d 1324, 1327–28 (D.C. Cir. 2000) (distinguishing "investigative details" from "names of individuals/personal information" and instructing that the former should be evaluated for release).

For very similar reasons, the IRS has failed to satisfy its obligation to release "[a]ny reasonably segregable portion" of records it has claimed exemptions for.  5 U.S.C. § 552(b).  "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242–43 (D.C. Cir. 1991) ("[A]gencies . . . are obliged to determine whether

17

nonexempt material can reasonably be segregated from exempt material"). In order to discharge this obligation an agency must release segregable information and then "provide[] a *detailed justification* and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Sciacca v. FBI*, 23 F. Supp. 3d 17, 26 (D.D.C. 2014) (emphasis added) (citation omitted). Here the IRS has failed to do both. As shown *supra*, instead of releasing segregable information the IRS has used block redactions to withhold entire pages of responsive material. And, instead of providing a detailed justification of its segregation efforts, the IRS has mustered only a conclusory two-sentence explanation. The IRS declarant's entire statement about segregability is as follows:

> I have personally reviewed and am familiar with all records addressed in this declaration and have attempted to make every reasonably segregable non-exempt portion of every responsive record available to plaintiff. The IRS has withheld in their entirety only those records that fall as a whole within a FOIA exemption, or those records wherein the portions exempt from disclosure under the FOIA are so inextricably intertwined with non-exempt material as to be non-segregable.

Rowe Decl. ¶ 8. This is essentially just a regurgitation of the statutory standard and is *per se* deficient. *See, e.g.*, *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008) (finding segregability explanation deficient where declarant baldly asserted that he "reviewed each page line-by-line to assure himself that he was withholding from disclosure only information exempt pursuant to the Act");[12] *see also Institute for Justice*, 941 F.3d at 574 (finding

---

[12]  *See also Animal Legal Def. Fund, Inc. v. Dep't of the Air Force*, 44 F. Supp. 2d 295, 301 (D.D.C. 1999) (finding segregability explanation "patently insufficient" where declarant attempted to discharge obligation "with the single averment that no withheld document was 'reasonably segregable because it was so intertwined with protected material that segregation was not possible or its release would have revealed the underlying protected material'" (citation omitted)); *Gray v. U.S. Army Criminal Investigation Command*, 742 F. Supp. 2d 68, 76 (D.D.C. 2010) ("Defendants' blanket assertion of non-segregability is contrary to the case law . . . ."); *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 90–91 (D.D.C. 2009) ("[E]xplanation is insufficient" where it states only that "'all information withheld . . . is not reasonably segregable because it is so

18

the IRS "does not appear to have accounted for its obliga[tion] to disclose [a]ny reasonably segregable portion of a record after removing the exempt material" (internal quotations omitted)).

But even if the Court finds a legitimate privacy interest in the redacted information that IJ seeks (there is none), it should still order release because "the public interest in disclosure" of that information vastly outweighs whatever trivial privacy interest remains after personal identifying information is redacted. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 12 (D.C. Cir. 2011). Even where privacy is implicated, FOIA still requires release of the material if its ability to "shed light on agency action" outweighs the privacy interest at stake. *Nation Magazine*, 71 F.3d at 894–95; *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (explaining that even where there is a legitimate privacy interest at stake, FOIA establishes a balancing test to determine whether the material can be withheld). The public interest in these documents, as shown *supra* at 6–7 & n.4, is substantial. And it is demonstrably greater than in many comparable cases where the courts have concluded that privacy interests were outweighed and the information should be produced. *See, e.g.*, *Am. Civil Liberties Union*, 655 F.3d at 12 ("[T]he disclosure of prosecutions in which the defendants were subject to warrantless cell phone tracking, and then were convicted or pled guilty, would shed light on government conduct."); *Lardner v. Dep't of Justice*, 638 F. Supp. 2d 14, 28–29 (D.D.C. 2009) ("[D]isclosure of the identities of unsuccessful clemency applicants [would] let citizens know what their government is up to."(internal quotations omitted)), *aff'd*, 398 F. App'x 609 (D.C. Cir. 2010); *Washington Post Co. v. U.S. Dep't of Agric.*, 943 F. Supp. 31, 36 (D.D.C. 1996) (finding a public interest in release of the names, addresses, and subsidy amounts received by recipients of a USDA subsidy program).

---

intertwined with protected material that segregation is not possible'" (alteration in original) (citation omitted)).

19

Finally, in order to best provide guidance for the IRS to use in its future productions, IJ respectfully submits that *in camera* review would be proper for the IRS's privacy redactions. The privacy redactions, as noted *supra*, make up the *vast* majority of the redactions that the IRS is applying to the Category 3 documents, and an order that addresses those redactions with comparatively finer detail should allow the IRS to more expeditiously complete its production. This Court has "broad discretion" to conduct *in camera* review. *See Quiñon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996); 5 U.S.C. § 552(a)(4)(B). And *in camera* review "does not depend on a finding or even tentative finding of bad faith." *See Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998). Instead, *in camera* review is proper where, as here, the agency has demonstrated an "inherent tendency to resist disclosure." *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978); *see also Spirko*, 147 F.3d at 996 (*in camera* review proper if Court has "uneasiness" about agency production/withholdings (citation omitted)); *see also Fuller v. CIA*, 2007 WL 666586, at *2 (D.D.C. Feb. 28, 2007). IJ respectfully submits that, if the Court conducts *in camera* review, it should sample a limited portion of the representative sample Category 3 documents over which the IRS has asserted the privacy exemptions (in unredacted form) in order to verify that the IRS can easily unredact the vast majority of this material without impairing privacy interests (*i.e.*, retaining limited redactions for name, address, social security, and bank account numbers). *See Barouch v. U.S. Dep't of Justice*, 962 F. Supp. 2d 30, 65 (D.D.C. 2013) (after reviewing *in camera*, Court ordered agency to unredact information that was "not inextricably intertwined with identifying information about third parties, witnesses, and law enforcement personnel" and specifically identified such material).

20

**B.**     **The IRS Has Improperly Withheld Information Under Exemption 5 (Deliberative Process Privilege)**

The IRS's withholdings for deliberative process privilege, 5 U.S.C. § 552(b)(5), are also untenably broad in multiple respects.

To withhold material under deliberative process privilege, the agency must demonstrate that "the document is 'predecisional'" (that "it was generated before the adoption of an agency policy") and that "the document is 'deliberative'" (that it "reflects the give-and-take of the consultative process"). *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Norton*, 309 F.3d at 39. To establish that a document is predecisional, the agency must "pinpoint an agency decision or policy to which the document contributed." *Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) (citation omitted); *SafeCard Servs., Inc. v. Securities & Exch. Comm'n*, 926 F.2d 1197, 1204 (D.C. Cir. 1991) ("[To] carry its burden, the agency must describe not only the contents of the document, but also enough about its context, viz. the agency's decisionmaking process . . . ."). And to establish that a document is deliberative, the agency must explain how it "bear[s] on the formulation or exercise of agency *policy-oriented* judgment." *Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992) (Ginsburg, R.B., J.) (emphasis altered). Importantly, while many deliberative documents are draft documents, not all draft documents are "deliberative." *See Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982) (circuit law "forecloses the . . . argument that any document identified as a 'draft' is per se exempt"); *Heartland All. for Human Needs & Human Rights v. U.S. Dep't of Homeland Sec.*, 291 F. Supp. 3d 69, 79 (D.D.C. 2018) (similar).

The IRS's explanation for its deliberative process privilege redactions falls short in multiple respects. The IRS has withheld 40 pages in full, and 11 pages in part under this

21

exemption.  *See* Rowe Decl. ¶ 33(a)–(b).  It claims that the withholdings are proper because they reflect the "give-and-take of the deliberative process" at the agency as part of "reaching a final decision regarding" two topics:   (1) "enforcement actions taken during the investigations of petitioners" and (2) "development of guidelines and steps for processing petitions."  *Id.* ¶ 32.  But the documents themselves, even with their redactions, undercut both of these explanations.

- *IFJ 0018-001015–16* (Alban Decl. Ex. K):  These pages consist of the IRS's "talking points" about "legislative proposals."  Rowe Decl. ¶ 33(b), row 2.[13]  The IRS's redaction explanation fails to cover this material at all.  Comments on legislative proposals plainly have nothing to do with "enforcement actions," nor development of ***IRS*** policies for processing petitions.  In addition to this mismatch between the IRS's justification for withholding and the actual content in the document, the agency has failed to "pinpoint an agency decision or policy to which the [talking points] contributed," and so has failed categorically to demonstrate how the talking points are predecisional.  *Senate of the Commonwealth of Puerto Rico*, 823 F.2d at 585 (citation omitted); *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 465 (D.C. Cir. 2014) (Kavanaugh, J.) (same).  Indeed, it appears the talking points at issue did not precede a more-"final" set of points at all.  In contrast to other documents for which the IRS has claimed the deliberative process privilege—where the IRS has identified an actual, final version of the document—the Rowe Declaration does not assert that there was any subsequent set of talking points.  *Cf.* Rowe Decl. ¶ 33(a), row 3 (explaining that draft TIGTA report was "antecedent" to final report); *id.* at row 4 (describing draft letter to Congress for which the IRS's production contains a "final version").

---

[13]   This row of the Rowe Declaration captures multiple other pages which appear to be duplicates of the material at IFJ 0018-001015–16.  IJ does not seek the duplicates.

22

- *IFJ 0018-001038–61* (Alban Decl. Ex. K):   These pages are a draft of the TIGTA Report described *supra*.  *See* Rowe Decl. ¶ 33(a), row 3.  The IRS has redacted them in full under the deliberative process privilege.  But this report likewise has nothing to do with either of the IRS's two justifications:  The TIGTA Report audited IRS enforcement actions *after they had taken place*, and so cannot be considered "deliberative" regarding those actions.  And it has nothing at all to do with "development of guidelines and steps for processing petitions."  Nor is it apparent how this document could be "deliberative" in any respect; the TIGTA report was a descriptive account of the IRS's various abuses of its civil asset forfeiture authority.  Its creation involved no exercise of "policy-oriented *judgment*" (indeed, there is no evidence that the TIGTA even has any policy-making role).  *Petroleum Info. Corp.*, 976 F.2d at 1435.  As such, it is not protected.  *See Playboy Enters., Inc. v. Dep't of Justice*, 677 F.2d 931, 935 (D.C. Cir. 1982) (holding fact report not privileged because compilers' mission was simply "to investigate the facts," and because report was not "intertwined with the policy-making process" (citation omitted)).

- *IFJ 0018-001075–77* & *IFJ 0018-001078* (Alban Decl. Ex. K):   These documents, respectively, consist of a draft of a letter to a congressman and an email concerning that letter.  *See* Rowe Decl. ¶ 33(a), row 4; *id.* ¶ 33(b), row 3.  The final letter is a follow-up from former-IRS Commissioner John Koskinen regarding testimony he gave to a House Committee and describes only *purely factual material*.  *See* Alban Decl. Ex. K (IFJ 0018-001120–22).  Because the final product itself contains no policy judgments, it is highly likely that the edits and email correspondence leading up to the final product likewise have nothing to do with policy.  Accordingly, the withheld material is not "deliberative," and is not exempt from disclosure.  *See Norton*, 309 F.3d at 39 ("Because the material cannot 'reasonably be said to

23

reveal an agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable.'" (citation omitted)).[14]

### C. The IRS Has Improperly Withheld Information Under Exemption 3 (Bank Secrecy Act)

The IRS has also improperly invoked Exemption 3, 5 U.S.C. § 552(b)(3), in connection with the Bank Secrecy Act, 31 U.S.C. § 5319.

FOIA Exemption 3 provides that an agency may withhold material that is "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The Bank Secrecy Act is such a statute. *See* 31 U.S.C. § 5319. But the Bank Secrecy Act is very specific about the types of documents that may be lawfully withheld. As described *supra* at 4, the Bank Secrecy Act and its implementing regulations require financial institutions to, among other things, file currency transaction reports for transactions in excess of $10,000. The Act then specifically exempts a "report and records of reports" from disclosure under FOIA. 31 U.S.C. § 5319. But that is *all* that the Bank Secrecy Act exempts from disclosure. *Yunes v. U.S. Dep't of Justice*, 2016 WL 4506971, at \*6 (D.D.C. Aug. 26, 2016) ("All that the [Bank Secrecy Act] exempts from FOIA disclosure . . . are reports or records of reports.").

---

[14] IJ does not challenge the IRS's other uses of the deliberative process privilege. Notably, however, the IRS used this exemption only once in its representative sample—for a single draft affidavit in support of an application for seizure warrant. *See* Rowe Decl. ¶ 39(a), row 5. The Court's order should instruct that the IRS's use of this exemption in future productions is limited to this specific type of material only. *See, e.g.*, *Webster v. U.S. Dep't of Justice*, 2020 WL 1536303, at \*3 (D.D.C. Mar. 31, 2020).

The IRS has also withheld certain material in its representative sample under Exemption 5 and the attorney-client privilege; specifically "legal advice from an IRS Office of Chief Counsel attorney" to "convey[] litigation hazards with respect to [a] proposed forfeiture and/or discussing the likelihood that a forfeiture would withstand constitutional scrutiny." Rowe Decl. ¶ 34(a), row 1. The Court's order should similarly instruct that the IRS's use of that exemption in future productions is limited to this type of material only. *See, e.g.*, *Webster*, 2020 WL 1536303, at \*3.

24

The IRS, however, is not using this exemption to withhold reports or records of reports. Instead, in about half of the instances where it has invoked this exemption, the IRS is withholding material that appears in an internal agency recommendation memorandum. *See* Rowe Decl. ¶ 30(a), rows 1–3. The other half are for material in affidavits in support of an application for a seizure warrant. *Id.* at row 4. In *every instance*, instead of withholding "reports and records of reports" like the Bank Secrecy Act allows, 31 U.S.C. § 5319, the IRS is withholding "*references in the memorandum* [or affidavit] to the filing of currency transaction reports." Rowe Decl. ¶ 30(a), rows 1–4 (emphasis added). This is not the same as an actual report or record of report. *Davis v. FBI*, 2019 WL 2870729, at *6 (D.D.C. July 3, 2019) ("[D]ocuments that involve [Bank Secrecy Act] reports or records of reports—as the FBI describes the withheld documents here— are not, strictly speaking, the same thing as actual [Bank Secrecy Act] reports or records of reports . . . ."). And so the withholdings were improper. *Boyd v. Exec. Office for U.S. Attorneys*, 87 F. Supp. 3d 58, 90 (D.D.C. 2015) (concluding agency did not properly invoke Bank Secrecy Act exemption where it withheld "references to information collected pursuant to the" Bank Secrecy Act).[15]

---

[15]    The IRS should not be permitted to invoke the Bank Secrecy Act for *any* documents in its future productions. If, however, the Court upholds the IRS's use of the Bank Secrecy Act in its representative sample, it should issue an order limiting the IRS's use of the exemption in future productions to cover **only** the same materials as used in the representative sample and as upheld by the Court. *See, e.g.*, *Webster*, 2020 WL 1536303, at *3.

The IRS also used Exemption 3 in conjunction with a provision in the Internal Revenue Code to partially withhold two pages in its representative sample, in both instances for a "petitioner's tax information that was received or prepared by the IRS with respect to the determination of the third-party petitioner's tax liability." IJ does not challenge these withholdings, but the IRS should be instructed that in future productions it can use this exemption for only this type of material. *See, e.g.*, *Webster*, 2020 WL 1536303, at *3.

**D.     The IRS Has Improperly Withheld Information Under Exemption 7(E) (Law Enforcement Techniques)**

The IRS has also improperly invoked Exemption 7(E).   Exemption 7(E) protects documents that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."   5 U.S.C. § 552(b)(7)(E).   But the IRS's use of this exemption is for material that has *nothing* to do with law enforcement.   The IRS used this exemption only once[16]—to redact part of a self-titled internal set of "guidelines" for evaluating petitions for remission or mitigation.   Rowe Decl. ¶ 48(a), row 1; Alban Decl. Ex K (IFJ 0018-000500–02).   That entire document addresses how the IRS will process petitions for remission or mitigation, *i.e.*, how the IRS will evaluate whether to *give money back to petitioners*.   This activity occurs long after the underlying criminal investigation has occurred, has nothing to do with the investigation itself, and in many respects is meant to *undo* the fruits of a poisonous investigation.   *See Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs & Border Prot.*, 2006 WL 1826185, at *8 (D.D.C. June 30, 2006) ("It cannot seriously be contended, then, that information concerning the destruction of seized property— which occurs after the seizure and investigation of the property is complete, and only after it is determined that the property will not be used as evidence—relates to a law enforcement investigation or prosecution.").   The document also contains significant other indicia that the redacted material has nothing to do with law enforcement.   The redaction, for example, appears under a header providing that it is "[g]uidance for corroborating [a] petition."   Alban Decl. Ex K

---

[16]   The Rowe Declaration technically claims the exemption has been applied to two documents, but they are duplicates.  Rowe Decl. ¶ 48.

(IFJ 0018-000500).  And it appears alongside mundane, non-law-enforcement practices, such as how to "validat[e] the identity of the petitioner."  *Id.* (IFJ 0018-000501).

The redaction is also improper because the IRS's rationale for it is illogical on its face.  The IRS explains that disclosure "could reasonably be expected to risk circumvention of the law" because individuals could use the released material to "operate in a manner that would avoid detection of their criminal activity."  Rowe Decl. ¶ 48(a), row 1.  But, again, the redaction appears in a document that provides guidance on how to *return money* to petitioners.  It is not apparent how an individual armed with the guidance for that process could ever use this knowledge to conduct criminal activity.  This explanatory failure independently dooms the IRS's withholding.  *See Judicial Watch, Inc. v. U.S. Secret Serv.*, 579 F. Supp. 2d 182, 187 (D.D.C. 2008) (rejecting use of this exemption where "the Court cannot see how disclosure of the information plaintiff seeks would reveal techniques, procedures, or guidelines used by the Secret Service.").[17]

## II.   THE COURT SHOULD ORDER THE IRS TO EXPEDITIOUSLY COMPLETE ITS PRODUCTIONS

Finally, this Court should issue an order that will provide complete and prompt relief to IJ.  Judge Kollar-Kotelly, to whom this case was originally assigned, recognized nearly a year ago that "a timeline of multiple years" for the IRS to complete its production would not be acceptable.  May 29, 2019 Minute Order.  Yet the IRS is producing approximately only 1,000 pages per month, with over 90,000 pages left to produce.  MSJ Stip. 1 & n.1.  If that estimate and schedule hold, it would result in production dragging out for over *seven more* years, on top of the one year that has already elapsed.  That timeline would also be wildly out of step with past Court-ordered production

---

[17]   The IRS did not use this exemption in its representative sample, and so should be instructed that it cannot use this exemption in its future productions.  *See, e.g.*, *Webster*, 2020 WL 1536303, at *3.

schedules.  *See, e.g.*, *NRDC v. Dep't of Energy*, 191 F. Supp. 2d 41, 43 n.5 (D.D.C. 2002) (ordering "vast majority" of processing of 7,500 pages to be completed within 32 days).  With the guidance provided by this Court's opinion on these partial summary judgment motions, the IRS should be able to process documents much more rapidly.  *See* MSJ Stip. ¶¶ 3, 8 (recognizing this guidance is in part the purpose of this partial summary judgment briefing).

## CONCLUSION

For the foregoing reasons the Court should grant IJ's partial cross-motion for summary judgment.

For clarity, IJ provides below a chart of its position as to remedy on each of the IRS's claimed exemptions.

| Exemption | Use in Representative Sample | IJ Position on Remaining Production |
|---|---|---|
| 3 (Bank Secrecy Act) | 21 pages (IFJ 0018-00xxxx: 7715; 7857; 8069; 8072; 8489; 7947; 8696; 7963; 8011–8012; 8026–8027; 8081; 8103; 8147; 8168; 8499–8500; 8503; 8671–8672) (Rowe Decl. ¶ 30(a), rows 1–4) | The IRS may not assert this Exemption in petitioner-specific files.  If, however, the Court upholds its use of this Exemption in the IRS's representative sample, then the IRS may use the exemption *only* to the same materials as used in the representative sample and as upheld by the Court. |
| 3 (Internal Revenue Code) | 2 pages (IFJ 0018-00xxxx: 8000; 8002) (Rowe Decl. ¶ 27(a), row 1) | The IRS may assert this Exemption in petitioner-specific files, but only to redact the same material it redacted in the representative sample. |
| 5 (Deliberative Process Privilege) | 9 pages (IFJ 0018-00xxxx: 8572–8580) (Rowe Decl. ¶ 33(a), row 5) | The IRS may assert this Exemption in petitioner-specific files, but only to redact the same material it redacted in the representative sample. |
| 5 (Attorney-Client Privilege) | 7 pages (IFJ 0018-00xxxx: 7951–7952; 8039; 8449; 8542; 8697–8698) (Rowe Decl. ¶ 35(a), row 1) | The IRS may assert this Exemption in petitioner-specific files, but only to redact the same material it redacted in the representative sample. |

| Exemption | Use in Representative Sample | IJ Position on Remaining Production |
|---|---|---|
| 6 & 7(C) (Privacy) | *See* table provided at Rowe Decl. ¶ 42(a), rows 1–5 & ¶ 42(b), rows 13–49; *see also* Rowe Decl. ¶ 42. | The IRS may assert this Exemption in petitioner-specific files ***only*** to redact names, social security numbers, addresses, birth dates, and bank account numbers, or such additional information as the Court may identify. |
| 7(E) | Not asserted in representative sample | The IRS cannot assert this Exemption in petitioner-specific files. |
| 7(F) | 156 pages (IFJ 0018-00xxxx: 7687, 7691, 7693–7699; 7704; 7710; 7712–7713; 7718; 7720–7721; 7729–7732; 7733; 7737–7739; 7741–7746; 7749; 7761; 7763; 7764–7770; 7771; 7775–7781; 7785; 7787–7788; 7863; 7944; 7954–7956; 7966; 7968; 7984; 7994; 8003–8004; 8017–8019; 8032; 8034; 8042; 8050; 8073–8074; 8093; 8095–8096; 8115; 8117–8118; 8137; 8139; 8140–8141; 8159; 8161–8162; 8180; 8182–8183; 8217–8218; 8452; 8454; 8455–8462; 8467; 8469; 8482; 8493–8494; 8506–8507; 8511–8513; 8518; 8521–8523; 8526; 8529–8531; 8536; 8543–8544; 8545–8546; 8552; 8554–8555; 8572; 8580; 8582; 8590; 8607; 8613; 8621; 8629–8630; 8638–8641; 8645; 8647; 8655; 8664–8665; 8677; 8679; 8681; 8686–8687; 8701; 8704–8705; 8708; 8710; 8741; 8743–8745) (Rowe Decl. ¶ 42) | The IRS may assert this Exemption in petitioner-specific files, but only to redact the same material it redacted in the representative sample.<br><br>IJ additionally seeks an order directing the IRS to use anonymous identifiers that correspond to specific officers or agents. |

Dated: April 24, 2020                    Respectfully submitted,

                                          */s/ Ryan S. Baasch*
                                          Andrew D. Prins (D.C. Bar No. 998490)
                                          Ryan S. Baasch (D.C. Bar No. 144370)
                                          LATHAM & WATKINS LLP
                                          555 Eleventh Street, NW
                                          Suite 1000
                                          Washington, DC 20004
                                          Telephone: (202) 637-2200
                                          Fax: (202) 637-2201
                                          ryan.baasch@lw.com

                                          *Counsel for Plaintiff*

30